## Taylor, County Jailer, v. Todd et al.

(Decided October 2, 1931.)

(Rehearing Denied January 15, 1932.)

WILLIAM L. WALLACE and FOWLER, WALLACE & FOWLER for appellant.

JAMES S. LACKEY and G. MURRAY SMITH for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

From a judgment recovered against him by Madison county, in a suit in equity begun against him by S. P. Todd et al., citizens and residents and taxpayers suing for and on behalf of the county, J. E. Taylor, the jailer of Madison county, has appealed.

Taylor had kept no books, and he and the fiscal court had agreed on these figures, as representing his receipts, expenditures, salary, etc.:

Jailer's Account for the Year 1926.

|  |  | Receipts. | Expenditures. |
|---|---|---|---|
| (w) | From the city of Richmond | $ 958.60 | |
| (x) | From the county of Madison | 7,991.20 | |
| (y) | From the state of Kentucky | 1,648.25 | |
| (z) | From the United States | 5,465.25 | |
| (a) | Paid his wife as matron | | $ 1,200.00 |
| (b) | Paid his son, Ronald Taylor, bookkeeper | | 1,200.00 |
| (c) | Paid for a turnkey | | 600.00 |
| (d) | Paid for a cook | | 365.00 |
| (e) | Food for 18,233 prisoner days at 40 cents | | 7,293.20 |
| (f) | Jailer's salary | | 5,000.00 |
| (g) | Paid to fiscal court | | 237.10 |
| (h) | Yet unaccounted for | | 168.00 |
|  |  | $16,063.30 | $16,063.30 |

Jailer's Account for the Year 1927.

|  |  | Receipts. | Expenditures. |
|---|---|---|---|
| (w) | From the city of Richmond | $1,259.30 | |
| (x) | From the county of Madison | 5,419.40 | |
| (y) | From the state of Kentucky | 1,300.45 | |
| (z) | From the United States | 2,302.50 | |
| (a) | Paid his wife as matron | | $ 1,200.00 |
| (b) | Paid his son, Ronald Taylor, bookkeeper | | 1,200.00 |
| (c) | Paid for turnkey | | 600.00 |
| (d) | Paid for cook | | 365.00 |
| (e) | Food for 10,509 prisoner days at 23 cents | | 2,417.07 |
| (f) | Retained by jailer as salary | | 4,499.58 |
|  |  | $10,281.65 | $10,281.65 |

S. P. Todd and other residents and taxpayers of the county, questioning the correctness of these accounts and allowances, sued the jailer and the county judge and the eight justices of peace who composed the fiscal court and sought a judgment for the benefit of the county for a balance of $5,904.71 alleged to be the amount the jailer was overpaid for the year 1926, and $1,890.60, which they allege he was overpaid for 1927, upon which sums they asked interest from January 1, 1927, and January 1, 1928, respectively.

The case was prepared and on hearing thereof the county was given a judgment against J. E. Taylor, the jailer, for $5,302.95 for year 1926, and $1,870.60 for year 1927, with interest on both sums from February 15, 1930, the date of the judgment. Taylor has appealed.

The first question presented was raised by Taylor's special demurrer, and is: Can these citizens and residents and taxpayers maintain this action, begun as it was, without any previous demand having been made upon the fiscal court, that it sue Taylor to recover these sums? The general rule is that ordinarily, such a demand should be made. In the case of counties, see Mills v. Lantrip et al., 170 Ky. 81, 185 S. W. 514; Sparks v. Robinson, 115 Ky. 453, 74 S. W. 176, 24 Ky. Law Rep. 2336; Com. v. Tilton, 48 S. W. 148, 20 Ky. Law Rep. 1056; Williams v. Stallard, 185 Ky. 10, 213 S. W. 197; 15 C. J., p. 643, sec. 353, note 94. In the case of municipalities, see Schoening v. Paducah Water Co., 230 Ky. 453, 19 S. W. (2d) 1073; 44 C. J., p. 1418, sec. 4596. In the case of a stockholder suing for a corporation, see Burley Tobacco Company v. Vest, 165 Ky. 762, 178 S. W. 1102, Shawhan v. Zinn, 79 Ky. 300, and 14 C. J., p. 924, sec. 1444.

But there is an exception to the rule under which it is equally as well settled that such a suit may be maintained, without such a demand, where it is apparent that it would be futile to make demand. See Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157; Fox v. Lantrip, 162 Ky. 178, 172 S. W. 133; Howard v. Deposit Bank of Owensboro et al., 80 Ky. 496.

In Shipp v. Rodes and Fox v. Lantrip, just cited, the taxpayers made the members of the fiscal court parties defendant just as was done in this case. In the Howard case the county judge was made a defendant,

and this, which is taken from that opinion, is the reason underlying that decision:

> "The county judge was a proper party defendant, because of the charge of collusion by him with the bank and of his official capacity, which is thereby impugned.

> "He should be allowed to meet that issue, and if successful, take control of the action by appropriate pleadings in the name of the county of Daviess; and if the facts that may be developed in the record show it to be the duty of the county of Daviess to prosecute this action for the protection of the taxpayers against the payment of the void bonds, the court should require it to do so under the supervision of its county judge."

We pointed out in Williams v. Stallard, 185 Ky. 10, 213 S. W. 197, how important it is that the fiscal affairs of a county be left in the control of the regularly constituted authority (the fiscal court), but, when the members of a fiscal court are made parties defendant to a suit, wherein the correctness, of their official acts, is impugned, and like these defendants they do not answer and do not defend, nor do they offer in good faith to take charge of and duly prosecute the cause of action asserted, as in the Howard case this court pointed out could be done, it would be a denial of justice for courts to say an aggrieved resident taxpayer could not go on with the litigation, merely because he began it without making demand of the fiscal court that it begin it.

This question cannot be distinguished from the question that was before this court in the case of Caudill v. Pinsion, 233 Ky. 12, 24 S. W. (2d) 938, 939, wherein Caudill, a citizen resident, and taxpayer of the city of Pikeville, sued the mayor and council of the city to prevent the payment of $1,296 upon an invalid claim, and in which opinion we said:

> "It is next insisted that plaintiff, as a taxpayer, cannot maintain this action without showing an application by him to the mayor and a request by that officer to contest the payment, with a refusal, and cases from this court are cited in support of that contention; but the law is unanimous to the effect that such a previous application is not required when the person or persons to whom it should be

made, and who are primarily required to do so, are the ones committing the acts sought to be prevented by the injunctive relief."

That case involved the fiscal affairs of a city; this one involves the fiscal affairs of a county. There is no difference in principle. That such is the general rule we learn from this which is taken from 44 C. J., p. 1419, sec. 4596:

"On the other hand a demand on the municipality to perform its duty has been held unnecessary, as a condition precedent to a suit by a taxpayer to restrain the performance of an illegal act; nor, it has been held, is it necessary first to request the law officer of the municipality to bring the action. No demand is necessary where the circumstances are such as to indicate affirmatively that such a request would be unavailing."

The rule in the case of a stockholder's suit is the same. See Pittsburg, etc., R. Co. v. Dodd, 115 Ky. 176, 72 S. W. 822, 74 S. W. 1096, 24 Ky. Law Rep. 2057, 25 Ky. Law Rep. 255; Lebus et al. v. Stansifer et al., 154 Ky. 444, 157 S. W. 727; Botts v. Simpsonville, etc., Road Co., 88 Ky. 54, 10 S. W. 134, 10 Ky. Law Rep. 669, 2 L. R. A. 594; Chilton v. Bell County Coke & Improvement Co., 153 Ky. 775, 156 S. W. 889.

In those cases this court allowed minority stockholders, who had not made previous demands of the directors, to sue on behalf of the corporations. The general rule regarding stockholders' suits is thus stated in 14 C. J., p. 934, sec. 1451;

"A demand upon the corporate authorities for redress of the grievance complained of may be dispensed with as a condition precedent in a stockholder's suit in behalf of the corporation, where it appears that such a demand would be useless and unavailing in that it either would be refused or if granted the litigation would necessarily be under the control of parties opposed to its success."

It would have been a futile thing for these taxpayers to ask this fiscal court to sue to right a wrong it had deliberately done, and it would be a denial of justice to say these taxpayers cannot maintain this suit because they did not make demand of the fiscal court that it sue,

when it is apparent such a demand would have been fruitless.

A casual reading of the case of Ray v. Woodruff, 168 Ky. 563, 182 S. W. 662, might lead one to conclude otherwise, but we have examined the record in that case, and it shows a written notice and request to sue had been served on the members of the fiscal court before the institution of that suit.

Let us note also there is a difference between suing for a claim on property concerning which the fiscal court had taken no action and a suit to recover for the county upon some claim concerning which the fiscal court has acted. For example, many counties have automotive road graders, which are quite expensive. If a taxpayer should see such a county machine in the possession of A. B., he would not be authorized to sue to recover it for the county, without first asking that the fiscal court do so; but if he should find on the records of the fiscal court an order giving this machine to A. B., or transferring it to A. B., for anything other than a valuable consideration moving to the county, that would be a different matter.

The special demurrer was properly overruled.

### The Receipts.

Coming now to the accounting itself, we find no disagreement between these parties relative to the amount of the jailer's receipts. His receipts for 1926 were $16,063.30 and for 1927, $10,281.65, but he questions the correctness of the act of the court in including the item (z), the receipts from the United States, in these accounts. That question was settled adversely to his contention in the recent case of Holland, Jailer, v. Fayette County, 240 Ky. 37, 41 S. W. (2d) 651.

### The Credits and Expenditures.

It is contended that, as the fiscal court has passed on the credits claimed by the jailer and allowed them and as no appeal has been prosecuted from its action, it is final. As to matters wherein the fiscal court has a discretion, that is true; hence its action in allowing the item (e) in these accounts cannot be disturbed·in the absence of a charge of mistake, fraud, or abuse of discretion, but, if it allows an item which it had no authority of law

to allow, the rule is otherwise. In Pulaski County v. Richardson, 225 Ky. 556, 9 S. W. (2d) 523, 527, we said:

"When it allows and issued a warrant to pay an invalid claim, its action is absolutely void, and of no more binding effect on the county than if the claim had been approved by a majority vote of the primary class in some of the county schools."

In Ray v. Woodruff, 168 Ky. 563, 182 S. W. 662, 663, we said:

"There is no difficulty about the law of this case. It has been settled by repeated decisions of this court that the fiscal court is a court of record as well as a court of limited jurisdiction, and can only appropriate money for purposes that it is authorized by law to make appropriations for. It has further been settled time and again that, if the fiscal court pays the claim of an officer or other person without authority of law, or appropriates money without authority, the amount so paid may be recovered in a suit against the person or officer receiving it."

By section 2237 of the Statutes the jailer could, with the approval of the county court, appoint a deputy, but to have such a deputy there would have to be an order of the county court showing the jailer had made such an appointment, that the appointment had been approved, and that on motion of the jailer this deputy had qualified by taking the oath required by section 2224, Ky. Stats., and sections 228 and 232, Ky. Const. Nothing of the kind appears in this record; therefore the fiscal court had no authority to allow as credits the items (a) and (b). The law makes no provision for the employment of a matron or a bookkeeper, and the trial court properly disallowed these items. The trial court allowed the jailer's claim for the employment of a turnkey and a cook, of which allowance no one has complained.

The jailer's account for credits and expenditures should be:

For 1926.

| | |
|---|---:|
| Turnkey | $ 600.00 |
| Cook | 365.00 |
| Food for 18,233 prisoner days at 40 cents | 7,293.20 |
| Jailer's salary | 5,000.00 |
| Due Madison county | 2,805.10 |
| | $16,063.30 |

612

| | |
|---|---|
| Turnkey | $ 600.00 |
| Cook | 365.00 |
| Food for 10,509 prisoner days at 23 cents | 2,417.07 |
| Jailer's salary | 5,000.00 |
| Due Madison county | 1,899.58 |
| | $10,281.65 |

Adding $2,805.10 and $1,899.58 and we have $4,704.-68, for which sum the court will enter judgment against Taylor and allow interest thereon from February 15, 1930, the date of the court's judgment. There is one item (g) $237.10, in the account of 1926, about the payment of which there is some uncertainty. Therefore the trial court will hear the evidence concerning it, and, if it has been paid, then the court will award the county a judgment against Taylor for $4,467.58 only, with interest as aforesaid.

The judgment is reversed, with direction. The whole court is sitting.